United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CUONG V. TRAN,<br><br>    Petitioner,<br><br>  v.<br><br>KATHLEEN DICKINSON,<br><br>    Respondent.<br>_____/ | No. C 09-03993 CW (PR)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |

    Petitioner Cuong Vinh Tran is a prisoner of the State of California, incarcerated at the California Medical Facility.  On September 14, 2009, Petitioner filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of his 2007 state conviction.  Respondent filed an answer, and Petitioner filed a traverse.  Having considered all of the papers filed by the parties, the Court DENIES the petition.

BACKGROUND

    The following is a summary of the facts taken from the November 20, 2008 state appellate court's unpublished opinion on

direct appeal.  Ex. F[1], People v. Tran, No. A119497, 2008 WL 4951599 at *1-3 (Cal. Ct. App. 1 Dist. Nov. 20, 2008).

Kenneth Zheng

    Kenneth Zheng testified that around 8:30 p.m. on January 16, 2005, he was in front of his house at 32nd Avenue and Balboa Street in San Francisco when, "[s]uddenly there was a truck pulled up, with a camper shell, and then there is a gentleman looking kind of funny.  He said that I shot his friend."  The vehicle was an older model black truck which Zheng thought "looked like a Ford."  The driver's side of the truck was approximately one foot from Zheng.  The man, whom Zheng identified as Petitioner, asked him, "Do you know Bobby Seng?"  Zheng replied that he did not, and Petitioner told Zheng that he "was partying with somebody and [Zheng] shot [Petitioner's] friend."  Petitioner was speaking "English and kind of like Cantonese with a heavy Vietnamese accent."  Zheng thought Petitioner's demeanor was "hostile, threatening," and testified that Petitioner was using "lots of foul words."  Petitioner demanded Zheng's identification.  Zheng felt "[k]ind of nervous in a way because . . . in my mind I don't want to be the one person that . . . he thinks that I shot his friend  . . . and he comes to seek revenge, you know."  While Zheng and Petitioner were speaking, Petitioner shoved his hand into his sweatshirt "kind of like a gun."  On direct examination Zheng was asked, "You thought that there was a gun under his sweatshirt?" and he replied, "Yeah, in a way."  On cross-examination, Zheng admitted that he had told the police that he was "pretty calm during the incident" and that he

---

[1] All references herein to exhibits are to the exhibits submitted by Respondent in support of the Answer.

2

had testified to the grand jury that he did not believe Petitioner had a gun. Zheng added that he "was calm, because this is not my first time of being robbed. This is probably my third time being robbed." Although Petitioner demanded Zheng's identification more than once, Zheng never gave it, or anything else, to Petitioner "because I am afraid that . . . once he got the I.D., then he can go into your house too. And I have my family living in the house. I don't know that he got a gun or not. If I give him the I.D. and stuff like that, you know, there's people in the house. . . . So I was scared that, you know, for the sake of my family, in a way." Zheng observed a San Francisco 49ers decal on the truck window. Zheng recalled that Petitioner had a "piercing like a ball type of thing, ball type of piercing" above his left eye.

Davis Cheng

    Davis Cheng testified that at approximately 9:00 p.m. that same evening, he was getting out of his car at 37th Avenue and Balboa Street when he "saw a truck drove very fast and parked parallel with my car, and then someone shout to me . . . to come over, and he said, 'I recognize you. Do you know Bobby Shen in Chinatown?' and I said 'no.'" The man, whom Cheng identified as Petitioner, spoke in Cantonese with a Vietnamese accent and used a hostile tone. Petitioner told Cheng to "come over." When Cheng protested, Petitioner said, "If you don't come, I will shoot you." Petitioner put his hand in his pocket, and Cheng testified that "I didn't know whether he had a gun or not, so I just followed his order." Petitioner asked Cheng to prove that he did not know Bobby Shen and then asked for Cheng's identification. Cheng felt, "At that point I have no choice because I [was] scared. He has a gun.

3

So I just followed his order. . . ." Cheng took his wallet from his pocket, and Petitioner grabbed it and removed $160. Petitioner then drove away "very fast" and threw the wallet at Cheng.

Han Feng

    Han Feng testified that on February 9, 2005, at approximately 11:15 a.m., he was trying to open his car at 13th Avenue and Clement Street when a pickup truck stopped about two feet from him. The man in the car called him "Kevin," and Feng replied that was not his name. The man was speaking both English and Cantonese and insisted that Feng's name was Kevin. Feng produced his driver's license, and the man took it. Feng thought the man might have a gun, and Feng was nervous because he was holding a red envelope with money in it that his aunt had given him for Chinese New Year. Feng told the man, "I don't have [much] cash. I have only red envelope, just like this $20 bill. That's all I have today. . . . [¶] But he didn't believe it. He just    . . . grabbed my wallet." The man showed Feng "a big hammer," about two and a half feet long, with a wooden handle. After the man took Feng's money he drove away. Feng identified Petitioner as the assailant in a photographic lineup, but was unable to identify him at trial.

Wu Shao-Wei

    Wu Shao-Wei testified that on March 16, 2005, at around 8:15 p.m., at Second Avenue and Clement Street, he was robbed by a man in a truck, whom he identified at trial as Petitioner. Petitioner spoke Cantonese with a heavy Vietnamese accent and said, "Don't be that conceited," before Wu had spoken to him. Petitioner was "very hostile" and told Wu, "Don't move," while making a motion that

4

suggested to Wu that he had a weapon.  Wu was "very scared."
Petitioner directed Wu to come to the driver's side of the car, and
Wu complied because Petitioner threatened to shoot him.  Petitioner
"grabbed my gold necklace from my neck . . . then asked me to show
him my I.D.  After I gave it to him, he told me, 'don't move.'"  He
"took my money out and then returned the wallet back to me."  He
took approximately $500 and "a few hundred dollars of Hong Kong
dollars, and $200 of [Chinese money]."

## PROCEDURAL BACKGROUND

On January 26, 2007, a San Francisco jury found Petitioner guilty of the attempted robbery of Zheng (Cal. Penal Code §§ 664/212.5(c)-Count 1) and the second-degree robbery of Cheng and Wu (Cal. Penal Code §212.5(c)-Counts 2 and 4).  Ex. A at 213-17, Ex. B at 841-45.  The jury found Petitioner not guilty of any offense with respect to Feng.  Id.  In a bifurcated proceeding, on January 31, 2007, the trial court found true that Petitioner had suffered a prior "strike" conviction (Cal. Penal Code § 667(d)&(e)) and had suffered two prior serious felony convictions (Cal. Penal Code § 667(a)).  Ex. A at 249.  Petitioner was sentenced to nineteen years and four months in prison.  Ex. A at 337-40, 355.

On February 29, 2008, Petitioner appealed his conviction to the California Court of Appeal.  Ex. C.  On November, 20, 2008, the state appellate court affirmed the judgment of conviction.  Ex. F. On December 26, 2008, Petitioner filed a petition for review in the California Supreme Court, which was denied on February 11, 2009. Exs. G-H.  Petitioner filed the instant federal habeas petition on September 14, 2009.

5

LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result. Clark v. Murphy, 331 F.3d 1062, 1067 (9th. Cir. 2003). A decision is an unreasonable application of federal law if the state court identifies the correct legal principle but unreasonably applies it to the facts of the prisoner's case. Id.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is the holdings of the Supreme Court as of the time of the relevant state court decision. Williams v. Taylor, 529 U.S. 362, 412 (2000).

6

To determine whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established law, a federal court looks to the decision of the highest state court that addressed the merits of a petitioner's claim in a reasoned decision. LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000). In the present case, the only state court to address the merits of Petitioner's claims is the California appellate court on direct review.

## DISCUSSION

Petitioner raises two claims. First, he alleges that the trial court erred by failing to instruct the jury on attempted grand theft as a lesser-included offense of attempted robbery. Second, Petitioner asserts that the trial court improperly admitted hearsay statements of the various victims.

I.   Jury Instruction

Petitioner claims that the trial court erred when it failed to instruct the jury on attempted theft as a lesser-included offense of attempted robbery. At trial, the defense requested that the jury be instructed that grand theft is a lesser-included offense as to all robbery counts. Ex. A at 156-59, Ex. B at 705-06, 716-17. The trial court gave the requested instruction for the three counts of second degree robbery (Ex. B at 719-20, 814-15), but for reasons not explained on the record, did not instruct the jury on the lesser-included offense of *attempted* grand theft with regard to the count of attempted second degree robbery.

A.  State Appellate Court Opinion Addressing Petitioner's Claim

On direct appeal, the state appellate court agreed that, under California law, attempted theft is a lesser included offense of attempted robbery. People v. Tran, 2008 WL 4951599 at *3. This is because attempted robbery encompasses the required elements of attempted theft but adds the element of an intent to use force or fear. Id. The court nonetheless rejected the claim on the grounds that Petitioner failed to establish evidence substantial enough to justify the instruction. Id. Citing People v. Breverman, 19 Cal. 4th 142, 162 (1998), the court defined "substantial evidence" as "evidence from which a jury composed of reasonable persons could conclude that the lesser offense, but not the greater, was committed." People v. Tran, 2008 WL 4951599 at *3. (internal punctuation omitted). Specifically, the court found that Petitioner's use of intimidation in the attempt was firmly established by his conduct, the words he used and the circumstances of the crime--all introduced through Zheng's testimony. Id. at *4. In light of this evidence, the court found, an attempted theft charge was not reasonably supported, and no such instruction was required. Id.

B.  Analysis of Petitioner's Claim Under AEDPA

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). Moreover, Petitioner's argument that the trial court failed to instruct the jury on a lesser included offense also fails to state a viable claim for habeas relief because the failure of a state trial

8

court to instruct on lesser-included offenses in a non-capital case, such as this one, does not present a federal constitutional claim. Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000).

Nor can Petitioner show that the instruction "had substantial and injurious effect or influence in determining the jury's verdict," as required for federal habeas relief. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  As noted by the state appellate court, Zheng--the victim of the attempted robbery--testified that Petitioner's demeanor was hostile and threatening, that Petitioner accused Zheng of shooting Petitioner's friend, that Petitioner "demanded" Zheng's identification and that Petitioner made gestures to suggest he was carrying a gun.  Ex. B at 109-14.  Zheng further testified that he felt nervous and feared for his family's safety if he were to turn over his identification.  Id. at 113, 124, 162.  The state court did not unreasonably find that Petitioner's claim that he engaged in an attempted theft without using or intending to use force or fear was not supported by the evidence.  Looking at the evidence of intimidation used by Petitioner, it cannot be said that the trial court's failure to instruct on attempted theft had a substantial and injurious effect on the verdict.  See Brecht, 507 U.S. at 637-38.

Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

II.  Admission of Hearsay Evidence

Petitioner claims that the trial court erred when it admitted the hearsay statements of certain victims through the testimony of

9

one of the investigating police officers. Specifically, during his cross-examination of each victim and of Police Inspector John Peterson, defense counsel asked certain questions in an apparent attempt to cast doubt on the victims' credibility and their identification of Petitioner as the person who robbed them. For example, defense counsel asked Zheng if he had previously told the police that Petitioner had gotten out of his truck. Ex. B at 125-29. Counsel questioned how certain Zheng was that Petitioner's piercing was in his left eyebrow and highlighted that Zheng could not remember whether the suspect had a goatee. Id. at 137-38, 153. On cross-examination of Cheng, defense counsel elicited that Cheng never mentioned any piercings or tattoos on the suspect in his report to the police. Id. at 190. Defense counsel also noted that Cheng had told Peterson that he thought the suspect was forty to forty-five years old and wore a light-blue hooded sweatshirt. Id. at 189. Defense counsel asked Peterson if Feng had mentioned the eyebrow piercing, mustache or goatee, and Peterson agreed that he had not. Id. at 351-52. Feng also told Peterson that there was no shell on the back of the truck, and did not mention any stripes or stickers on the vehicle. Id. at 352. Defense counsel elicited from Peterson that Wu did not recall any piercings or tattoos on the man who robbed him. Id. at 352-53.

    On redirect, the prosecution asked Peterson a number of questions to rehabilitate the victims' credibility. For example, the prosecutor asked if Zheng mentioned that the robber drove "a Ford Bronco or pickup truck," and Peterson said Zheng did mention this. Id. at 371. Peterson also testified that Zheng told him that "the suspect spoke in Cantonese and appeared to be Vietnamese" and

10

that the suspect mentioned the name Bobby Seng. Id. at 371-72. The prosecutor went through other details that Zheng had told Peterson about the incident, including: (1) "a sticker on the back window with the letter[s] S.F. inside a circle," (2) that the robber had a "stocky build," a "piercing . . . with a stud over the left eye," and "a slight goatee," and (3) that the robber was wearing a gray sweatshirt. Id. at 372-73. The prosecutor also went over Peterson's interview with Cheng and elicited testimony that Cheng had told him that the robber asked about "Bobby from Chinatown," simulated a gun and asked for Cheng's wallet. Ex. B at 373. Cheng also reported that the suspect "grabbed the wallet out of [Cheng's] hand" and threw it back at him, and that the suspect spoke in Cantonese. Id. Peterson testified that Feng had told him the robber referred to him as "Kevin" and demanded his driver's license, and that he spoke in both English and Cantonese. Id. at 374. Peterson testified that Wu had told him "the suspect said he . . . saw Mr. Wu's cousin John in Chinatown the day before." Id. Wu also reported that the robber asked for Wu's identification and "that he was posturing like he had a gun hidden behind the door." Id. at 375. Wu described the robber to Peterson as "38 to 40, Cantonese with a Vietnamese accent . . . [and] a chubby build." Id.

The defense objected to the redirect testimony, citing Cal. Evidence Code § 352, which permits the court to exclude unduly prejudicial evidence. Id. at 371. The objection was overruled. Id. at 371-72. The defense failed to make a hearsay objection.

11

A. State Appellate Court Opinion Addressing Petitioner's Claim

On direct review, the state appellate court found that defense counsel's failure to object on hearsay grounds at trial forfeited the claim on appeal. People v. Tran, 2008 WL 4951599 at *6. The court found that even if the objection had been preserved, however, the statements were admissible under Cal. Evidence Code § 791(a), which allows a witness's prior consistent statements where evidence of a prior inconsistent statement has been introduced to impeach that witness, and where the consistent statement was made before the inconsistent one. Id.

B. Analysis of Petitioner's Claim Under AEDPA

In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 749-50 (1991). The Ninth Circuit has recognized and applied the California contemporaneous objection rule in affirming the denial of a federal petition on grounds of procedural default where there was a complete failure to object at trial, see Inthavong v. Lamarque, 420 F.3d 1055, 1058 (9th Cir. 2005), and also where, as here, the petitioner raised only an evidentiary, not a constitutional objection, at trial. See Davis v. Woodford, 384 F.3d 628, 653-54 (9th Cir. 2004). Because Petitioner has not shown cause

12

and prejudice or a miscarriage of justice, Coleman, 501 U.S. at 749-50, this claim is barred.

Further, as discussed above, the court of appeal noted that the statements were admissible under Cal. Evid. Code § 791.  This Court will not disturb the California Court of Appeal's interpretation of California evidence law.  See Estelle, 502 U.S. at 67-68 (a federal writ is not available for alleged error in the interpretation or application of state law).

Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas corpus is DENIED.

Further, a Certificate of Appealability is DENIED.  See Rule 11(a) of the Rules Governing Section 2254 Cases.  Petitioner has not made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Petitioner may not appeal this Court's denial of a Certificate of Appealability but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.  See Rule 11(a) of the Rules Governing Section 2254 Cases.

13

The Clerk shall terminate any pending motions as moot, enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

Dated: 8/9/2011

CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

CUONG,

    Plaintiff,

v.

TRAN-V-KATHLEEN DICKINSON et al,

    Defendant.

Case Number: CV09-03993 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 9, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Cuong V. Tran F-92816
CMF Prison
P.O. Box 2000
Vacaville, CA 95696-2000

Dated: August 9, 2011

        Richard W. Wieking, Clerk
        By: Nikki Riley, Deputy Clerk

15